1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5         -v-                        Case No. 17-20274

6    JUMANA NAGARWALA, FAKHRUDDIN
     ATTAR, FARIDA ATTAR, FATEMA
7    DAHODWALA, & TAHERA SHAFIQ,

8

9    _____ Defendants./

10                       **MOTION HEARING**
                **BEFORE HON. BERNARD A. FRIEDMAN**
11               United States District Judge
                Theodore Levin U.S. Courthouse
12              231 West Lafayette Boulevard
                   Detroit, Michigan 48226
13

                    **(Tuesday, August 29, 2017)**
14

     APPEARANCES:        SARA WOODWARD, ESQUIRE
15                       MALISA CHOKSI DUBAL, ESQUIRE
                         Appearing on behalf of the Government.
16
                         SHANNON SMITH, ESQUIRE, ESQUIRE
17                       Appearing on behalf of Defendant Jumana
                         Nagarwala.
18
                         MARY CHARTIER-MITENDORF, ESQUIRE
19                       Appearing on behalf of Defendant
                         Fakhruddin Attar.
20
                         MATTHEW NEWBURG, ESQUIRE
21                       Appearing on behalf of Defendant Farida
                         Attar.
22
                         BRIAN M. LEGGHIO, ESQUIRE
23                       Appearing on behalf of Defendant
                         Fatema Dahodwala.
24
                         JEROME SABBOTA, ESQUIRE
25                       Appearing on behalf of Defendant Tahera
                         Shafiq.

```
 1

 2
       COURT REPORTER:      MARIE METCALF, CVR, CM
 3                          Federal Official Court Reporter
                            867 U.S. Courthouse
 4                          231 W. Lafayette Boulevard
                            Detroit, Michigan 48226
 5                          metcalf_court@msn.com

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1
2
3                              **TABLE OF CONTENTS**
4
5        **PROCEEDINGS – TUESDAY, AUGUST 29, 2017**
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*U.S.A. v. Nagarwala, et al.*

1

2

3          Detroit, Michigan

4          Tuesday, August 29, 2017

5          At 11:03 a.m.

6                    *     *     *

7          DEPUTY COURT CLERK:  United States District Court

8   for the Eastern District of Michigan is now in session, the

9   Honorable Bernard A. Friedman presiding.

10         THE COURT:  Thank you.  You may be seated.

11         You may call the case, please.

12         DEPUTY COURT CLERK:  The Court calls case number

13  17-20274, Nagarwala.

14         THE COURT:  I believe we have more -- there's the

15  rest of the two, but that's okay.

16         DEPUTY COURT CLERK:  Et al.

17         THE COURT:  May we have appearances, starting with

18  the government, please?

19         MS. WOODWARD:  Good morning, Your Honor.  Sara

20  Woodward on behalf of the United States, and Malisa Dubal on

21  behalf of the United States.

22         With us at counsel table are Special Agents Kevin

23  Swanson with the FBI, and Special Agent Lisa Keith with

24  Homeland Security.

25         THE COURT:  Okay.  Thank you.

*U.S.A. v. Nagarwala, et al.*

1          And for the defendants, please?

2          MS. CHARTIER:  Good morning, Your Honor.  Mary

3    Chartier, on behalf of Fakhruddin Attar who's standing behind

4    me.

5          THE COURT:  Okay.

6          MR. NEWBURG:  Good morning, Your Honor.  Matt

7    Newburg on behalf of Farida Attar, who's standing behind me.

8          THE COURT:  Okay.

9          MR. SABBOTA:  Good morning, Judge Friedman.  How are

10   you?

11         THE COURT:  Good.  How are you?

12         MR. SABBOTA:  Good.

13         THE COURT:  A new face.

14         MR. SABBOTA:  Pardon?

15         THE COURT:  A new face.  It's a new face at the

16   table.  I mean, it's a new face at that table.  It's a very

17   familiar face to me.  I've known him a long time.

18         MR. SABBOTA:  Jerome Sabotta, on behalf of Ms.

19   Shafiq.  She's in the peach outfit.

20         MR. LEGGHIO:  Good morning, Judge.  May it please

21   the Court, Brian Legghio, appearing on behalf of Defendant

22   D-6, Fatema Dahodwala, and she is sitting in the audience in

23   the pink.

24         THE COURT:  Thank you, good.  Another new face.

25   Also, nice to see you.

*U.S.A. v. Nagarwala, et al.*

1          MR. LEGGHIO:  Good morning.

2          MS. SMITH:  Good morning, Your Honor.  Shannon Smith

3    on behalf of Jumana Nagarwala.

4          My client was transported here.  Is there any way we

5    can get --

6          THE COURT:  I'm sorry.  I noticed that she wasn't

7    here and I was going to say something as soon as I got to

8    you.

9          Oh, does she have a seat next to you?  Okay, good.

10   Perfect.

11         And I don't know if you finished putting your

12   appearance on the record.

13         MS. SMITH:  I did.  Shannon Smith on behalf of

14   Defendant Nagarwala, who now stands --

15         THE COURT:  Who is now present.

16         You may all be seated.  Thank you.

17         Okay.  We have several things today, and, in fact,

18   you know what, I'm going to take them in order that they were

19   filed, how's that?

20         So the first one that we have is the motion to

21   unredact the warrant affidavits.

22         And the government says that they have already done

23   that, is that correct?

24         MS. CHARTIER:  After we filed the motion, the

25   government did provide affidavits as applicable to each of

*U.S.A. v. Nagarwala, et al.*

1    our clients is my understanding.  There likely will be an

2    issue because we all don't have the same discovery, but

3    that's a different motion, and that's certainly not filed and

4    teed up for today.

5           THE COURT:  Okay.  But you have received, you being

6    the attorneys who requested them have received unredacted

7    copies of the warrants, and affidavits, and so forth?

8           MS. CHARTIER:  As directly applicable to each of our

9    clients, yes.

10          THE COURT:  Each of your clients.  And then there's

11   going to be an issue on whether or not you can share them

12   between, I guess we will have to talk about at a later time.

13          MS. CHARTIER:  Yes, Your Honor.

14          THE COURT:  Anybody disagree with that?

15          MR. NEWBURG:  Well, I think that we did get some of

16   the -- I think we got the unredacted applications of the

17   affidavits.  However, we haven't gotten all of the discovery

18   applicable to Defendant Three, including the inventory and

19   other --

20          THE COURT:  Okay.  The only thing I have before me

21   today is the affidavits.

22          MR. NEWBURG:  Correct.

23          THE COURT:  And the government says they have

24   provided those.  Now, if you need those, maybe you can work

25   it out.  If you can't, I'm here.

*U.S.A. v. Nagarwala, et al.*

1        MR. NEWBURG:  Okay.

2        THE COURT:  But as I say, the only thing I have

3   before me today is the affidavits, so it would be hard to --

4   okay.

5        So In terms of that motion, I'm going to dismiss it

6   as moot, because it has been complied with at this point.

7        MS. CHARTIER:  Thank you, Your Honor.

8        THE COURT:  Without prejudice.  Of course, if you

9   have other things you have to deal with, bring them forward.

10       MS. CHARTIER:  Thank you.

11       THE COURT:  The next one is the motion to compel,

12   and has to do with the video, and also some examinations that

13   were done, and that were -- and the photographs, also.

14       Counsel, you may --

15       MR. NEWBURG:  Thank you, Your Honor.  I filed the

16   motion on behalf of Farida Attar.  And in reviewing what the

17   --

18       THE COURT:  It has been joined by all others, I

19   believe, also.

20       MR. NEWBURG:  That's correct, that's correct.

21       It's our position, Judge, that the photographs and

22   the videos fall directly within Rule 16.

23       THE COURT:  Let me just ask one question.  The

24   government in your response indicated that you did not have

25   them at one time.  Do you have all of them at this point?

*U.S.A. v. Nagarwala, et al.*

1        MS. WOODWARD:  Your Honor, we have the

2   photographs -- I'm sorry, we have the videos from Dr. Nazar,

3   which are the majority of the children at issue.  We do not

4   have the videos from Dr. Harper at this time.

5        THE COURT:  Those are the ones that he is trying to

6   receive permission from the hospital, and so forth, for?

7        MS. WOODWARD:  Correct.  So we're still working with

8   the hospital and with Dr. Harper's legal counsel to obtain

9   those.

10       THE COURT:  Okay.  But the other ones you do have?

11       MS. WOODWARD:  Correct.

12       THE COURT:  I'll hear your argument of course in a

13  minute.  I just wanted to see where we all stand.  Okay, back

14  to you.  I'm sorry.

15       MR. NEWBURG:  No problem, Your Honor.

16       They are in the possession of the government, and

17  the government has conceded that they're material to the

18  defense.

19       There is no exception that would prohibit the

20  ability for us to make copies.  And that is really the crux

21  of the disagreement that we have with the --

22       THE COURT:  Yeah, I understand.  And, you know, I'm

23  thinking out loud and I want to hear from everybody.

24       The government has indicated that they will provide

25  them to you, and that they will provide them to your experts

*U.S.A. v. Nagarwala, et al.*

1    without you having to identify who your experts are.

2          Their responses indicated to me that their problem

3    is they don't want them to be copied and so forth, but that

4    they can be viewed and so forth.

5          They make a fairly strong argument in relation to

6    the confidentiality of these, and I certainly trust the

7    attorneys here.  You've been forthright in all the other

8    discovery.  There hasn't been a violation.  There hasn't been

9    anything even concerning not following all the rules, and the

10   rules are pretty strict as we've put them into place at this

11   point.

12         And I know that obviously the attorneys are not that

13   interested in looking at them.  It's their experts that would

14   probably be more interested in looking at them, and relooking

15   at them, and studying them, and so forth.

16         And I'm trying to figure out how I can -- because

17   these are third-party, so to speak, you know.  And everybody

18   would view them a little bit differently, view these

19   particular female minors.  I'm not sure, you know, and I keep

20   thinking, you know, how -- personal effect -- the proposal of

21   the government, so I could review them.  I've no desire to

22   review them or I wouldn't know what to review anyhow, even if

23   I did review them.  And I suspect the attorneys wouldn't

24   know.

25         MR. NEWBURG:  We might be in the same boat, Your

*U.S.A. v. Nagarwala, et al.*

1   Honor.

2          THE COURT:  Yeah, until you show them to an expert.

3   And I think you absolutely have a right not to disclose who

4   your experts are to the government, because you may have many

5   experts and you may get several opinions and only want to use

6   one or two, certainly, or none.  You have a right to do that.

7          The government suggests that they have 400 FBI

8   offices around the country.  They can handle your expert

9   wherever they are.  And I'm addressing this maybe to the

10  government more than any -- I'm thinking out loud, is what

11  I'm telling you.  I've been thinking about this, how do I put

12  this together.

13         I think the defense has a right to see these.  I

14  think the defense experts have an absolute right to see

15  these, and to study them, and to digest them, and to compare

16  them, and do all kinds of -- whatever they have to do in

17  order to have a proper defense.

18         But I understand the government's problem.  And

19  though the FBI has 400 offices and so forth, and I'm sure to

20  put it, how do I protect the defendants not having to

21  disclose who their experts are if I put it in the hands --

22  and again, not that I don't trust the government, or the FBI,

23  or anything, but how do we do that?  I just don't know,

24  mechanically.

25         MR. NEWBURG:  Your Honor, one of the difficulties

*U.S.A. v. Nagarwala, et al.*

1    that we have with the proposal from the government was even

2    if we don't have to disclose the names, my assumption is

3    going to the FBI office like that --

4             THE COURT:  Yeah, that's what I'm saying.  If you go

5    to an office --

6             MR. NEWBURG:  It's an end around to make the

7    disclosure.

8             THE COURT:  If you walk into an office, you've got

9    to sign your name, they've got to know who you are.  They're

10   not going to let just anybody in their offices.

11            MR. NEWBURG:  Correct.  And the second bit is that

12   the experts that we've consulted with initially are not all

13   in the United States.  They're in Europe, for example.

14            THE COURT:  That makes it even more difficult for

15   me.

16            MR. NEWBURG:  So that's why one of the issues of --

17   one of the solutions could be, that I would suggest to the

18   Court is that we get provided one CD.  We are not looking to

19   copy those CDs.  We are not looking to provide additional

20   copies to any experts.

21            We have a protective order in place.  I had

22   exchanged an e-mail with Ms. Woodward indicating that we

23   would agree to a more restrictive protective order than the

24   restrictive one we already have, but we don't have any

25   interest in making copies.  We can provide, I think what the

*U.S.A. v. Nagarwala, et al.*

1   Court suggested the last time we were before it, a log of the

2   people who we allow to view the discovery.

3          THE COURT:  What I was thinking of doing, but you've

4   just added a new dimension, and that is if people are

5   overseas, and I have no jurisdiction over them in terms of,

6   you know, if you share with them on the Internet or some

7   other way.  I am very concerned about the individuals who had

8   these exams, these pictures.

9          I'm very concerned about the defendants having all

10  of this information, learning as much as you can, getting as

11  many experts.

12         And one of the things I was thinking if, giving you

13  one, not to be copied, not to be given, you can take it to

14  your experts, and show it to the experts and so forth, and

15  that's very controllable because it's not going over the

16  Internet.  It's just --

17         MR. NEWBURG:  That's correct.

18         THE COURT:  -- you take that disk if you have an

19  expert in Texas or wherever it happens to be, you take that

20  over there because you want to talk him, and look at it, and

21  everything else.

22         But if he has an expert overseas, that's creating a

23  little bit more problem for me, because the only way that you

24  could possibly do that is by putting it onto the Internet.

25  And as we --

*U.S.A. v. Nagarwala, et al.*

1          MR. NEWBURG:  Judge, we would -- sorry to interrupt

2     the Court.  We would bring the CD to them.  This would all be

3     done, as far as I'm concerned, in face-to-face meetings, and

4     with hand delivery.

5          THE COURT:  Then it's much easier.

6          MR. NEWBURG:  There would not be any --

7          THE COURT:  The hand -- you'll be with them, they're

8     looking at it.

9          MR. NEWBURG:  Correct.  There would be no

10    Cloud-based system.  There wouldn't be any secure line on the

11    Internet.  It just would be --

12         THE COURT:  It won't go on the Internet under any

13    circumstances?

14         MR. NEWBURG:  No.

15         THE COURT:  It won't be on any server or anything.

16    It will just be on that CD, it'll just be on the attorney's

17    computer, and the person, whoever that person happens to be,

18    will be somebody that is an expert.

19         And I know the government talked about whether it's

20    an M.D. or something, and so forth.  But it may be -- it has

21    to be an expert of some type, as opposed to just somebody.

22    But I'm not necessarily driven by the fact that it has to be

23    a medical doctor.  It could be, I don't know, something else.

24         But what's the government have to say about that,

25    one CD.  They -- wherever it is, "they" being the attorneys,

*U.S.A. v. Nagarwala, et al.*

1    would be responsible to make sure it isn't copied, make sure

2    that it isn't given, pretty much like our other protective

3    order, adding one dimension, and that dimension is some

4    specifics in terms of who can view it, and that it's not to

5    be on any kind of system that is connected in any way to

6    anything -- any network, or Internet, or something.

7            What's the government's position on that?

8            MS. WOODWARD:  Our position, Judge, is that that

9    would be incredibly hard to enforce, and that I am not

10   suggesting that anyone here in the room might willfully

11   violate that order, but with six defendants, and as Your

12   Honor indicated and Mr. Newburg said, you know, potentially

13   many experts and several opinions, that I just don't know

14   logistically that we could enforce that.

15           And I think if the concern is that the defense

16   attorneys don't want the government to know the experts that

17   they're consulting with, I think there could be a way around

18   that.

19           If the experts came to the FBI, we could set up

20   almost like a tag team, where the FBI would not tell us or

21   even tell the case agents who had come to view this material,

22   and we could make it available to them that way, without

23   letting the trial team know who was visiting at that --

24           THE COURT:  Yeah.  I mean, they do that in law

25   firms.  They call it a Chinese wall.  But this is a little

*U.S.A. v. Nagarwala, et al.*

1     bit different, because this is a -- and I agree.  But I think

2     that it's not as unenforceable as you think it is.

3            The people that will be responsible for this are all

4     members of the bar.  They all have their license at stake,

5     and I'm not suggesting that they would do anything other than

6     that.  And the Court has its contempt power, which includes

7     criminal contempt, and I think that if this kind of order

8     were violated, it would be criminal contempt.  I'm not making

9     that ruling, but my first thought was that it would be

10    criminal contempt.  I mean, it's of that nature.  So I think

11    it can be enforced.

12           And as I said, I don't have any reason to believe

13    that the attorneys won't abide by it.  I mean, I have every

14    reason to believe that the attorneys will abide by it.

15           Mr. Legghio, you were going to say something.

16           MR. LEGGHIO:  Yes, sir.

17           THE COURT:  I saw your hand moving, but let's see

18    your mouth.

19           MR. LEGGHIO:  Okay.  Thank you for allowing me the

20    floor.  I guess I would just want to add in this, Judge.  And

21    you've practiced in state court, you've practiced in federal

22    court.  Sitting at this table, collectively, there's over 150

23    years of legal experience.  We've all --

24           THE COURT:  All right, you don't have to convince

25    me.  I think sitting at that table is the outstanding members

*U.S.A. v. Nagarwala, et al.*

1    of our bar, in terms of not only practicing, but also in

2    terms of ethics, and morality, and so forth.  You don't have

3    to convince me of that.  I am totally convinced.

4              MR. LEGGHIO:  But what I wanted to add was that is

5    every lawyer at this table, or collectively, we've tried

6    murder cases, we've tried rape cases, child rape cases, we've

7    seen autopsy reports.  We've seen every type of children who

8    have been raped and are still living.  We get all of those

9    reports.

10             We've all honored the Court's dictates.  While this

11   is a sensitive issue, I guess what I'm saying to the Court,

12   perhaps it balances that.  I don't -- I'm asking the Court

13   not to have too high a sensitivity, because this is not

14   significantly different than a child rape case in which we

15   get all of the reports, and all of the pictures, and all of

16   --

17             THE COURT:  I think it's significantly different.

18   But I think that you're correct, I think you have to have

19   them.  I think you have to have access to them.  And I think

20   the suggestion that we add to the protective order that in

21   terms of these videos, photographs, and whatever they call

22   the results of that test that they were looking at, that they

23   be limited to the attorneys, that if the attorneys want to

24   share them with their experts, they may.  But they can't give

25   them copies, that it will not be on the Internet or any other

*U.S.A. v. Nagarwala, et al.*

1    kind of network.  It will only be on a non-network kind of

2    computer.  And if somebody -- and that the attorney will be

3    responsible for that, in their possession.  So it has to be

4    done by a member of the bar, an attorney of record of this

5    case.

6              And I think that that would solve the problem,

7    because I don't equate this to a rape case because it is a

8    much different kind of case, it's a much different kind of

9    examination.  But I think that would solve the problem.  It

10   would give the defendants plenty of opportunity to get

11   prepared for trial, and would protect those that are involved

12   in this particular case and went through that examination.

13             MS. WOODWARD:  Your Honor, if I could just --

14             THE COURT:  Of course.

15             MS. WOODWARD:  A point that I didn't get to make to

16   Your Honor is that this order would be against the standard

17   practice for child abuse pediatricians.  I've spoken with the

18   child abuse pediatricians in this case, who have each

19   performed thousands of anogenital examinations aided by

20   colposcope, including in rape cases, as Mr. Legghio

21   suggested.  Neither of them have ever turned over a copy of a

22   video of an anogenital examination documented by colposcope,

23   so this would be unusual and very different from how this

24   evidence is generally treated.

25             THE COURT:  I wasn't aware of that, but I assumed

*U.S.A. v. Nagarwala, et al.*

1    that that was true.  But I also think that the allegations in

2    this case, as we all know, this is a case of first

3    impression.  It is not a rape case.  It is a much different

4    kind of case.  The whole charge, in and of itself, is

5    different.  I think that the charge and what is alleged in

6    this particular matter is a different scope of viewing, and

7    medical, and so forth.

8         I think probably, if I'm not mistaken from just what

9    I've read in everybody's pleadings, most of the doctors never

10   came across this themselves before, and they were kind of

11   looking, and trying to evaluate.  I can't make an analogy

12   necessarily between a rape case.  I understand that it's one

13   of first impression for the pediatricians also, but also for

14   this Court and all of us.

15        But I think that this would solve that problem and

16   also solve the problem of being able to afford the defendants

17   an adequate defense in this matter.

18        MS. WOODWARD:  It is a case of first impression, of

19   course, but this type of evidence, anogenital exams

20   videotaped by colposcope is not unusual.  And these are not

21   generally ever turned over because they are so sensitive.

22   And I do think that the analogies in my response to child

23   pornography evidence, and also child forensic interviews,

24   which are also not produced to the defendants because it

25   depicts the likeness of the child.  So there are analogies

*U.S.A. v. Nagarwala, et al.*

1    that are similar, even though this is a unique case.

2         THE COURT:  I saw yours, and I was reading it, and I

3    was looking at it, trying to be persuaded in one way or the

4    other, and it is very persuasive.

5         But then I also read on, and in this particular case

6    the allegations are of cutting, the allegations are of

7    certain sensitive parts of a female's anatomy, and so forth,

8    which are different in terms of charge, and which they have

9    to defend in this particular matter.

10        So the Court will, as I have indicated, turn over

11   under those circumstances.

12        MS. WOODWARD:  And, Your Honor, there was some

13   discussion of one CD.  Is that one CD per defendant and

14   defense attorney, is it a single hard drive that the defense

15   team shares?  I'm unclear --

16        THE COURT:  What --

17        MS. CHARTIER:  It would be one per defendant.  I

18   mean, that's what I would think, because while we are a team,

19   they are six individuals fighting for their constitutional

20   rights.

21        THE COURT:  But that means that each attorney has to

22   have a dedicated or one that's only for this, so it doesn't

23   get --

24        MS. CHARTIER:  Absolutely.

25        THE COURT:  I think one each.  I think they have to

*U.S.A. v. Nagarwala, et al.*

1    right to --

2              MS. WOODWARD:  And I think it would most likely be

3    on hard drive because these are videos.  If we can put it on

4    a DVD, we will.

5              THE COURT:  Okay.  I don't know anything about that.

6              MS. WOODWARD:  And just so you know, there's no way

7    if this DVD or hard drive is copied, technologically, we will

8    never know.

9              THE COURT:  I didn't know that, but I assumed that,

10   as I say.  The order is only as good as the credibility of

11   the attorneys, and the potential punishment, just like

12   anything else.  That's what we're all about.  We all follow

13   the rules and -- because we know that the punishment would be

14   severe, and I have no reason to believe that we would ever

15   get to that spot, but if we did, I -- I don't have to say

16   anymore.

17             Mr. Sabbota?

18             MR. SABBOTA:  Excuse me.  Judge, could we have a

19   date once the order's entered, how soon it will be turned

20   over?

21             MS. WOODWARD:  And, Your Honor, I can only turn over

22   what's in my possession.  So this will not include the videos

23   from Minnesota, and the Court's order may or may not affect

24   whether, and how soon we get those.

25             THE COURT:  Okay.  But the order will indicate that

*U.S.A. v. Nagarwala, et al.*

1    as soon as you get those, that you will turn them over to the

2    defense.  And if the answer there, from the hospital and the

3    pediatricians, that they are not going to give them to the

4    government, then as soon as you hear that information,

5    whichever way you go, you should notify the defendants

6    forthwith.  So if you get them, you turn them over.  If you

7    don't get them, then you'll let them know we can't get them

8    because they are not turning them over to us, so they know

9    what's forthcoming.

10             MR. SABBOTA:  Okay, if we set a date --

11             THE COURT:  Why don't you do the order.  As soon as

12   I get the order they should be turned over within a week of

13   the order.  I don't think there's any reason --

14             MR. SABBOTA:  Thank you, Judge.

15             THE COURT:  And the form of it, you guys can agree

16   on.  I don't know anything about the IT, so I don't know if

17   it should be a disk, or a thumb drive or whatever you guys

18   believe is the most secure.

19             Okay.  I think those are the outstanding motions on

20   that.  And the other motion that we have is the motion for

21   the conditions of pretrial release.

22             MS. SMITH:  Your Honor, with respect to that motion,

23   my office did file a motion to seal, but we have not received

24   the order yet, which is why we've not filed it on the

25   electronic filing system.

*U.S.A. v. Nagarwala, et al.*

```
 1          THE COURT:  Oh, I see it.  I signed it.  My clerk
 2    just came back today.
 3               (Discussion off record)
 4          MR. SABBOTA:  I don't mean to interrupt you, but
 5    before we get to the other motion, does that order also
 6    encompass the kids' talk, interviews with the children?
 7          THE COURT:  I'm sorry.  The other order, does it
 8    also include --
 9          MR. SABBOTA:  My understanding is the Court is going
10    to enter an order that says that we can receive the medical
11    examination, but there's also the kids' talk interviews.
12          MS. WOODWARD:  That's not part of the pending
13    motion.
14          THE COURT:  That wasn't part of the motion, but
15    hopefully you guys can work that one out too, on the same
16    basis.
17          MR. SABBOTA:  Okay.  I thought that it was --
18          THE COURT:  No, it's not part of the motion, and I
19    have never seen the government's response to that.  I knew
20    they were outstanding, because they were mentioned, but not a
21    part of the -- hopefully on the same basis it should be
22    pretty much the same.  But I'm not making that ruling because
23    I haven't read the government's position.
24          Do we have anybody here from pretrial?
25          MS. WOODWARD:  There is no one here from pretrial.
```

*U.S.A. v. Nagarwala, et al.*

1    I spoke with Officer Hinojosa this morning.  He was not

2    aware that a motions had filed by Defendant Jumana Nagarwala.

3            THE COURT:  Yeah, because I think she did not file

4    it because she asked that it be sealed.

5            MS. SMITH:  Right.  So as soon as we get the order

6    to seal, which it sounds like we're going to -- we're going

7    to file in on the system.  So maybe if we could just work out

8    a date for the hearing, that would be the best.

9            THE COURT:  Okay.  That's great.

10           (Discussion off record)

11           THE COURT:  Neither of the motions have been set for

12   hearing yet.  Both your clients, as well as the other clients

13   have not been set for motion.

14           I've read them, and for some reason, I thought that

15   -- not yours, but the others in terms of the bond conditions

16   were up today.  So we will set a date for both of those.

17           I don't think the government has not responded to

18   either, I don't think.  I haven't seen the response.

19           MS. WOODWARD:  That's correct.  Mrs. Nagarwala's

20   motion was filed last Wednesday, and the Attar motion was

21   filed yesterday.

22           THE COURT:  So the government has to have some time

23   to respond.

24           DEPUTY COURT CLERK:  Final pretrial/plea cutoff that

25   is to September 19th at eleven.  I don't know if that's a

*U.S.A. v. Nagarwala, et al.*

 1    doable date.

 2              MS. SMITH:  That's totally fine for me.  If the

 3    Court could it hear it sooner, I could do it sooner.  If not,

 4    the 19th is fine.

 5              DEPUTY COURT CLERK:  For the motions.

 6              THE COURT:  That's the two motions, the two motions

 7    that deal with the bond.  I've read both of them, but I have

 8    not read the government's response.  Obviously they haven't

 9    filed one, and that will give the government adequate time to

10    respond.

11              DEPUTY COURT CLERK:  You're going to hear the

12    motions ahead of the final pretrial?

13              THE COURT:  Oh, yeah, because the final

14    pretrial will -- we'll have a final pretrial on that date,

15    too, just so we can talk about scheduling, but I don't think

16    it's going to be prepared -- let's do it on the 19th.  We'll

17    hear both of those motions.

18              MS. SMITH:  Perfect.

19              THE COURT:  And we will also discuss what's going to

20    go on with discovery, what kind of dates you guys are looking

21    at, whether you're looking at motions, all of those kinds of

22    things at the same time.

23              MS. SMITH:  I think that's perfect.

24              THE COURT:  Good.  Anybody else, while we're all

25    together, have anything to offer?

*U.S.A. v. Nagarwala, et al.*

1          MR. SABBOTA:  I just want to be sure, Judge.  We

2     have the pretrial coming up, we have a trial date, and

3     there's other discovery we are going to receive.  We need

4     experts to look at the --

5          THE COURT:  I assume the trial date is not going.  I

6     mean, that's what I'm saying.  No, I assume that on the 19th,

7     what I assume we're going to do is sit down with the

8     attorneys, and probably in chambers, and talk about how much

9     time you need and, you know, so start thinking about what

10    you're looking at, how much time you need, what you want to

11    do.

12         Start looking at any outstanding motions that you

13    may want to file in terms of discovery, and we will talk.

14    And I think that's pretty much how we're going to have to do

15    it.

16         And the same thing with the government.  The

17    government has a lot of moving parts, too.  They've got lots

18    of witnesses, different places, and so forth.  So start

19    thinking about getting prepared for trial and then start

20    thinking about dates for trial, when witnesses are available,

21    and things of that nature, so that we can at least start

22    putting together some skeleton of the whole case.

23         And I have no expectations that we are going to have

24    it all on the 19th, but we will do as much as we can on the

25    19th.

*U.S.A. v. Nagarwala, et al.*

1          MS. WOODWARD:  Thanks.

2          MR. SABBOTA:  Thank you.

3          THE COURT:  Thank you.  Anything else?

4          MS. WOODWARD:  No.  Thank you, Your Honor.

5          THE COURT:  And you're our only case today.  We will

6    stand in recess.  Thank you.

7          All you have to do is pretty much the same order

8    that you had before, and add these conditions as it relates

9    to the specific information that's in the motion.  So if you

10   put that together I think that's -- you know, and share it

11   between yourselves.

12         But I think the other one is pretty strong, so if we

13   add this to the other one, that we have exactly what we're

14   talking about today.

15         So get it to me.  As soon you get it to me, I'll

16   sign it, and a week later you'll get the information.

17         MR. SABBOTA:  Thank you very much.

18         MR. LEGGHIO:  Thank you, Your Honor.

19         MS. SMITH:  Thanks, Your Honor.

20         THE COURT:  Okay, good.  Thanks.

21         (Court in recess at 11:30 a.m.)

22                        *      *      *

23

24

25

*U.S.A. v. Nagarwala, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14 **C E R T I F I C A T I O N**

15     I, Marie J. Metcalf, Official Court  Reporter for

16 the United States District Court, Eastern District of

17 Michigan, Southern Division, appointed pursuant to the

18 provisions of Title 28, United States Code, Section 753, do

19 hereby certify that the foregoing is a correct transcript of

20 the proceedings in the above-entitled cause on the date

21 hereinbefore set forth.

22     I do further certify that the foregoing transcript

23 has been prepared by me or under my direction.

24 s\Marie J. Metcalf          September 1, 2017

25 Marie J. Metcalf, CVR, CM      (Date)